# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DEWOLFF, BOBERG & ASSOCIATES, INC. §<br>§<br>*Plaintiff*, §<br>§<br>§<br>v. §<br>§<br>JUSTIN PETHICK §<br>§<br>*Defendant*. § | CIVIL ACTION NO. 4:20-CV-00556<br>Judge Mazzant |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Justin Pethick's Motion to Dismiss for Improper Venue (Dkt. #20). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED in part and DENIED in part**.

### BACKGROUND

This case arises from Defendant's purported breach of contract and breach of fiduciary duty stemming from the employment relationship between the parties. To better understand the nature of this dispute, the Court sets forth the events leading up to this lawsuit.

Plaintiff is a global management consulting company. Plaintiff assists its clients with improving productivity, quality, service, and profitability. To facilitate its business, Plaintiff has developed a database that contains all its confidential and proprietary information. The information contained in the database includes Plaintiff's client and prospective client lists; non-public information relating to Plaintiff's clients' businesses; Plaintiff's proprietary process, diagnostic, and training materials; Plaintiff's intellectual property, including proprietary software; and non-public data concerning Plaintiff's analysis and operating approaches ("Trade Secrets").

A third-party vendor, Salesforce, maintains Plaintiff's stored Trade Secrets. Only a small number of Plaintiff's employees have the password required to access the Trade Secrets. Defendant's job required him to have access to Plaintiff's Trade Secrets. Additionally, Plaintiff requires all employees to sign a non-disclosure agreement ("NDA").

Defendant accepted an offer of employment from Plaintiff in early October of 2018. Plaintiff informed Defendant in its offer letter, sent on October 4, 2018, that Defendant would be required to sign Plaintiff's standard form of employee nondisclosure. Plaintiff signed the offer of employment.

Defendant executed the non-disclosure agreement ("NDA") on October 5, 2018. Defendant also executed an Employee Service and Non-Competition Agreement ("Employment Agreement") on October 5, 2018.

Defendant resigned from his position in mid-May of 2020. Defendant had accepted a job with and began working for The Powers Company ("Powers")—a competitor of Plaintiff's—before resigning. Further, Plaintiff alleges that Defendant actively solicited Plaintiff's clients and prospective clients in violation of the NDA and Employment Agreement.

Plaintiff sent Defendant a cease and desist letter and notice of potential legal action (the "Cease and Desist") on May 21, 2020. The Cease and Desist reminded Defendant of his obligations under the NDA and Employment Agreement. The Cease and Desist directed Defendant to *inter alia*, cease and desist from soliciting Plaintiff's clients and take a leave of absence from Powers while Plaintiff conducted its investigation into Defendant's activities; warned Defendant that his failure to cease and desist such violations or other violations of the NDA and Employment Agreement would result in legal action against him; and notified Defendant

that Plaintiff intended to move forward with obtaining injunctive remedies if he failed to comply with the Cease and Desist.

In response to the Cease and Desist, Defendant agreed to postpone his sales pitch meeting with a prospective client—one Defendant allegedly solicited from Plaintiff—from June 4, 2020 to June 15, 2020.

On July 9, 2020, Defendant removed the case to the Northern District of Texas (Dkt. #1). On July 20, 2020, the Northern District of Texas transferred the case to the Eastern District of Texas, Sherman Division (Dkt. #5).[1] On October 2, 2020, Defendant filed the present motion (Dkt. #20). On October 16, 2020, Plaintiff filed its response (Dkt. #21). On October 23, 2020, Plaintiff filed its First Amended Complaint (Dkt. #22). That same day, Defendant filed his reply (Dkt. #23).

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond

---

[1] Defendant removed the case to the Northern District of Texas, despite the case being filed in Collin County—a county within the Eastern District of Texas, Sherman Division.

3

the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

## ANALYSIS

Defendant contends that Plaintiff's Complaint should be dismissed for improper venue pursuant to 28 U.S.C. § 1391. Alternatively, Defendant asks this Court to transfer the case to the Northern District of Georgia, Atlanta Division.

Plaintiff argues that dismissal is not warranted. Further, Plaintiff claims that the Northern District of Georgia is an improper and inconvenient venue, and the interest of justice favors transfer back to the to the Northern District of Texas, Dallas Division.

### I. Federal Rule of Civil Procedure 81(c)

Neither party addresses Federal Rule of Civil Procedure 81 or the effect it has on this case. Rule 81(c) applies to removed actions and states, in relevant part, that:

> A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
> (A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;
> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
> (C) 7 days after the notice of removal is filed.

FED. R. CIV. P. 81(c)(2). "Defenses covered by Fed. R. Civ. P. 12(b) are among the 'other defenses or objections under these rules' contemplated by Rule 81(c)(2)." *Strukmyer, LLC v. Infinite Fin. Sol.*, No. 3:13-cv-3798-L, 2013 WL 6388563, at *2 (N.D. Tex. Dec. 5, 2013) (citing *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007)). Rule 81(c) "expressly

4

imposes the deadline for either answering or filing a Rule 12(b) motion in a case removed to federal court." *Id.* at *3.

Rule 81(c)(2) governs this case because it was removed, and Defendant has not answered. Defendant was served with the state court action on June 11, 2020 (Dkt. #1, Exhibit 8 at p. 2). Defendant removed the case on July 9, 2020 (Dkt. #1). Defendant was therefore required by Rule 81(c)(2) to file his answer or present other defenses or objections by July 16, 2020. Defendant did not file the present motion until October 2, 2020 (Dkt. #20). Defendant's motion is untimely. However, despite the untimeliness of the motion, Defendant has not waived his improper venue challenge. *See Strukmyer*, 2013 WL 6388563, at *3 (noting that "Rule 81(c)(2) does not address the waiver of defenses or the validity of a Rule 12(b) motion that is filed before an answer" but [r]ather, a defendant who fails to timely file an answer or a Rule 12(b) motion risks default"). Defendant's motion is brought under Rule 12(b)(3) and complies with the requirements of Rule 12(g) and 12(h). *See Id.* (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1395 (3d ed. 2013) ("A defense or objection is lost in the federal court only if it is not interposed as prescribed by Rules 12(g) and 12(h).")).

Defendant has neither filed an Answer nor asserted a Rule 12 defense prior to the filing of this motion. The only affirmative relief sought by Defendant has been a motion to remand (Dkt. #10). To date, no responsive pleading has been filed that would result in a waiver of a Rule 12 defense under either Rule 12(g) or 12(h). *See* FED. R. CIV. P. 12(g) (stating that a party may not make a second Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion"); *see also* FED. R. CIV. P. 12(h) (stating that Rule 12(b)(1)–(5) defenses are waived if not made before or simultaneously with a party's first responsive pleading). Because Defendant's Rule 12(b) defenses were not waived, the Court will address Defendant's

improper venue challenge. *See Strukmyer*, 2013 WL 6388563, at *4 (concluding that a "venue challenge itself is not waived by any untimely filing of a motion raising the challenge, where Defendants filed that motion before Defendants filing any other Rule 12 motion and before answering").

## II.    Motion to Dismiss or, in the Alternative, Transfer

Both parties acknowledge that venue in this District is improper under 28 U.S.C. § 1391.[2] The Court must therefore determine whether the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) or transferred pursuant to 28 U.S.C. § 1406(a).

Federal Rule of Civil Procedure 12(b)(3) serves as the procedural mechanism through which a party may challenge venue.  The substantive provision governing venue is found in 28 U.S.C. § 1391.  Because both parties acknowledge that venue is improper in the Eastern District, the Court need not analyze whether this District is proper under § 1391.  When venue is improper in the District in which it is filed or removed to, the Court looks to 28 U.S.C. § 1406 for guidance.

28 U.S.C. § 1406 states, in relevant part, that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Thus, § 1406 gives the Court two options: either dismiss the case or transfer it to a proper district in which the case could have originally been brought.

Section 1406(a) was "broadly designed to allow transfer instead of dismissal." *Van Dursen v. Barrack*, 376 U.S. 612, 634 (1964).  Transfer from an improper court to a proper one is in the interest of justice when it allows the plaintiff to avoid the "time-consuming and justice-defeating

---

[2] Plaintiff's sole contention for proper venue laying in this Court was Defendant's residence in Collin County at the time suit was filed.  In its order denying remand to state court, this Court found that Defendant was not a Texas resident at the time of filing (Dkt. #17).

6

technicalities" that would result from a dismissal. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The Fifth Circuit has reiterated that point. *Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984, 987 (5th Cir. 1989) (noting that a court may "transfer a case under 28 U.S.C. § 1406(a) in lieu of dismissing the action.").

This case was removed to federal court over three months ago. This Court has issued a memorandum opinion and order that denied remand back to Texas state court. The parties have participated in a Rule 26(f) attorney conference and submitted a proposed scheduling order—which the Court subsequently entered. Plaintiff has filed an amended complaint. The case has progressed to a point where justice would be best served through a transfer. If the Court were to dismiss the action, all the progress made would be lost. The parties would have to restart the case and file motions duplicative to the ones presented before this Court. Due to the status of the case, the Court finds that a transfer under § 1406—rather than a dismissal—would be in the best interest of justice.

### I. Transferee Court

Although the parties do not dispute that venue is improper in the Eastern District of Texas, they do dispute where venue *is* proper. Defendant asserts that venue is proper in the Northern District of Georgia, Atlanta Division. Plaintiff claims that venue is proper in the Northern District of Texas, Dallas Division.

Under 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in . . . (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." After reviewing the language of § 1391, the Court finds that venue is proper in the district of Defendant's Florida residence—not the Northern District of Georgia.

The plain language of § 1391 indicates that a venue is deemed either proper or improper at the time of filing suit. 28 U.S.C. § 1391(b) ("A civil action *may be brought in . . .*"); *see Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1077 (E.D. Tex. 1997) (finding venue improper over a defendant because "[a]t the time of filling . . . Delta did not 'reside,' as that term is defined in § 1391(c), in Texas or the Eastern District of Texas" and because the defendant did not reside in the district at the time suit was filed, "§ 1391(a)(1)[3]'s requirement that 'all defendants reside in the same State' simply [was] not present in [the] case"). Defendant moved to Florida in March of 2020 (Dkt. #20, Exhibit A at p. 3). The case was filed in Collin County, Texas on June 10, 2020 (Dkt. #1, Exhibit(s) B at p. 2). Defendant did not relocate to Georgia until, at the earliest, July 17, 2020 (Dkt. #20, Exhibit A at p. 2). Thus, at the time of filing, Defendant was a citizen of Florida. For purposes of § 1391(a)(1), the District in Florida where Defendant resided would be a proper venue in which suit could have been brought. That is not the only proper venue, however.

28 U.S.C. § 1391(b)(2) provides that "a civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Defendant contends that all of the conduct giving rise to Plaintiff's claims in this case took place in Florida and Georgia. Plaintiff claims that a substantial part of the events giving rise to Plaintiff's action occurred in the Northern District of Texas.

A venue "does not have to be the place where the most relevant events took place," but "the selected district's contacts must still be substantial." *McClintock v. School Bd. East Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008). The Court looks to all claims asserted by Plaintiff to determine whether the contacts may be deemed "substantial." *Trois v. Apple Tree Auction Ctr.,*

---

[3] The Court notes that the "all defendants reside in the same State" language is located in § 1391(b)(1), not § 1391(a)(1).

*Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) (noting that the district court's analysis did not recognize the distinction between the facts giving rise to the two separate claims pleaded).

Plaintiff brings two claims against Defendant: breach of contract and breach of fiduciary duty.  "[I]n an action for breach of contract, venue is proper at the place of performance." *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. Unit B 1981).  Courts also look at "where the contract was negotiated or executed, where it was to be performed, and where the alleged breached occurred." *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 705 (E.D. Tex. 2007) (quoting *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co. S.A.*, No. 1-07-CV-337, 2007 WL 2461817, *2 (E.D. Tex. 2007) (citations omitted)).  When considering where a substantial part of a tort claim occurred, courts "tend to focus on where the allegedly tortious actions took place and where the harms were felt." *ENTU Auto Servs., Inc. v. PicMyRide.Biz, LLC*, No. 15-77, 2015 WL 1638179, *4 (E.D. La. 2015).

### a. Plaintiff's Breach of Contract Claim

Plaintiff's first claim, breach of contract, arises from the Employment Agreement and NDA signed by Defendant.  Defendant's alleged breach resulted when he communicated with and attempted to solicit Plaintiff's customers for Defendant's new employer—all while remaining employed by Plaintiff.

Plaintiff is headquartered in Dallas, Texas.  Defendant resided in McKinney, Texas when he signed the Employment Agreement and NDA.  Defendant's offer letter contained Plaintiff's address in Dallas.  The Employment Agreement was signed by Plaintiff's director of human relations in Dallas.  Defendant worked in Plaintiff's office located in Dallas until he moved to Florida in March of 2020.  Defendant remained employed by Plaintiff until around May 15, 2020.  The contract was not allegedly breached, however, until Defendant allegedly "actively call[ed] on

9

and attempt[ed] to solicit, for himself and [his new employer], [Plaintiff's] clients and prospective clients, in violation of his employment agreements" (Dkt. #21 at p. 3). Plaintiff claims that it learned of Defendant's purported actions "immediately following his resignation" (Dkt. #21 at p. 3). Defendant was therefore residing in Florida at the time of the supposed breach of his employment agreements (Dkt. #20, Exhibit A at p. 4).

A substantial portion of the events leading to the breach of contract claim arose in the Northern District of Texas. Defendant is headquartered in Dallas, the Employment Agreement and NDA were entered into in Dallas, Plaintiff signed the documents in Dallas, and Defendant performed most of the contract in Dallas. Only one other location was relevant during the contractual relationship: Florida. Defendant resided in Florida during the time when he allegedly breached the Employment Agreement and NDA. The parties have not suggested, and the Court cannot determine, that a "substantial part of the events giving rise to the claim" occurred in Florida when all work was remote and targeted at Plaintiff in Dallas.

In support of the Northern District of Georgia, Atlanta Division being a proper venue under § 1391(b)(2), Defendant states that "[Defendant's] new employer is based in Atlanta and many of the allegations relate to actions allegedly tak[en] by [Defendant] on behalf of his new employer in Atlanta" (Dkt. #20 at p. 8). Though Defendant's new employer may be located in Atlanta, Defendant himself was not until after the breach allegedly occurred. The actions giving rise to the breach of contract claim came from Defendant himself—either in Dallas or in Florida.

### b. Plaintiff's Breach of Fiduciary Duty Claim

The Court reaches the same conclusion regarding Plaintiff's breach of fiduciary duty claim. Plaintiff claims that Defendant breached his fiduciary duty by "accepting employment and simultaneously performing the same job duties as [Plaintiff's] competitor . . . while still employed

[by Plaintiff]" and by not disclosing to Plaintiff "that he was simultaneously working for [his new employer]" (Dkt. #22 at p. 10).[4]  Further, Plaintiff claims Defendant breached his fiduciary duty "while he was still employed [by Plaintiff]" when he "utilized and disclosed [Plaintiff's] confidential information relating to [Plaintiff's] business and clientele in order to steal away [Plaintiff's] clients and prospective clients for himself and [his new employer]" (Dkt. #22 at p. 10).  Defendant allegedly also "breached his fiduciary duties to [Plaintiff] by usurping corporate opportunities from [Plaintiff]" (Dkt. #22 at p. 10).

The actions alleged by Plaintiff—that Defendant had "improper communication with Triumph" occurred "the week of May 11, 2020" (Dkt. #20, Exhibit A at p. 4).  According to Defendant, he had already moved to Florida and was "working from [his] leased home in Florida that week" (Dkt. #20, Exhibit A at p. 4).  Further, "[a]ny communications [Defendant] had were from [his] Florida residence" (Dkt. #20, Exhibit A at p. 4).  As with the breach of contract, the actions occurred at that location because of the remote nature of Defendant's work at the time.

The Court also considers where the harms were felt.  The alleged harms were directed towards Plaintiff – a Dallas company.  Plaintiff's headquarters are in Dallas.  Although the client Defendant inappropriately communicated with is a Pennsylvania company, Plaintiff claims that all communications by Plaintiff were directed to its Arlington, Texas office.  As Defendant points out, however, Arlington, Texas is not within the Dallas Division of the Northern District of Texas—it is within the Fort Worth Division.  Regardless of that fact, the Court finds that a substantial part of the actions giving rise to the claim occurred in the Northern District of Texas, Dallas Division.  That is where the harm was felt by Plaintiff.  As with the breach of contract claim,

---

[4] The Court recognizes that Plaintiff filed its First Amended Complaint on October 23, 2020 (Dkt. #22).  The operative facts considered by the Court remain unchanged, and the Court therefore cites to the new filing.

although Defendant's new employer might have reaped a benefit from the alleged actions, the breach of fiduciary duty claim arises from the actions of Defendant himself.

The Northern District of Georgia, Atlanta Division is not proper venue in this case. Defendant did not reside in Atlanta at the time suit was filed. No substantial events or omissions giving rise to the claims asserted occurred in that District. As the Court has analyzed, two proper venues exist: the District in Florida where Defendant resided during the time of the alleged breaches and the Northern District of Texas, Dallas Division. Because the Court may transfer the case "to *any* district or division in which it could have been brought," the Court finds that the interests of justice are best served if the case is heard in the Northern District of Texas, Dallas Division. Although two districts are proper, only one has been requested by either party—the Northern District of Texas, Dallas Division. Further, no connection presently exists between the Florida district and the case—Defendant has since moved from that district to Atlanta, Georgia. Plaintiff is still located in the Northern District of Texas, Dallas Division. The work relationship began and primarily continued in the Northern District of Texas, Dallas Division. The alleged harms resulting from Defendant's actions were felt in the Northern District of Texas, Dallas Division. A substantial part of the events giving rise to the claim occurred in the Northern District of Texas, and this Court finds that justice will be best served if the case is transferred to that court.

## II.   Waiver

Defendant asserts in his reply that Plaintiff waived the right to seek transfer to the Northern District of Texas (Dkt. #23 at p. 4). Specifically, Defendant claims that "Plaintiff cannot sidestep its failure to comply with the Court's order and effectively file its own venue transfer motion in its Response for the first time asking that the case be transferred to the Northern District of Texas in response to [Defendant's] properly and timely filed Motion" (Dkt. #23 at p. 4).

Defendant cites to a decision from the Northern District of Texas in support of its waiver argument. However, that case is distinguishable from the one before the Court. In *Am. Contractors Indem. Co. v. ECI Constr., Inc.*, the court noted a Defendant's delay in seeking a 28 U.S.C. § 1404(a) transfer. No. 1:07-CV-209-C, 2008 WL 11350197 (N.D. Tex. 2008). The court considered the delay when analyzing the relevant § 1404(a) factors—specifically, the factor concerning the possibility of delay and prejudice. *Id*. at *6. The factor was found to disfavor transfer; however, it was not wholly dispositive of the claim. Further, the court never discussed whether the delay *waived* the right to seek transfer. In fact, "[a] motion to transfer venue under 28 U.S.C. § 1404(a) is *not* subject to the pleading requirements of Rule 12(h)." *Id.* (emphasis added). While a motion to transfer venue is not subject to the 12(h) pleading requirements, "it still must be filed with 'reasonable promptness.'" *Id.* (quoting *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir. 1989).

Plaintiff did not file an independent motion to transfer venue. The Scheduling Order set a deadline for all motions to transfer—October 2, 2020 (Dkt. #19). Plaintiff, in its response to Defendant's motion to dismiss under 12(b)(3), first requested that the Court consider the Northern District of Texas as a *proper* venue under § 1406. If the Court finds that justice supports a transfer, it must "transfer such case to any district or division in which it could have been brought." *Id.* The Court agrees that, to the extent Plaintiff has incorporated a § 1404(a) analysis into its Response, Plaintiff cannot bypass the deadlines imposed in the Scheduling Order. The Court therefore does not consider whether the traditional *Volkswagon* factors favor transfer to the Northern District of Texas, Dallas Division over the Northern District of Georgia, Atlanta Division.[5]

---

[5] The § 1404(a) analysis is inapposite, however, because the Court has concluded that the Northern District of Georgia, Atlanta Division is not a proper venue.

## CONCLUSION

It is therefore **ORDERED** that Defendant Justin Pethick's Motion to Dismiss for Improper Venue (Dkt. #20) is hereby **GRANTED in part and DENIED in part**.

This civil action is hereby transferred to the United States District Court for the Northern District of Texas, Dallas Division.

**SIGNED this 20th day of November, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE