IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DEWOLFF, BOBERG &** | § | |
| **ASSOCIATES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:20-CV-3649-L** |
| | § | |
| **JUSTIN PETHICK and THE** | § | |
| **RANDALL POWERS COMPANY,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant Justin Pethick's Motion for Partial Dismissal and Motion for More Definite Statement (Doc. 98), filed November 16, 20221; and Defendant The Randall Powers Company's Motion for Partial Dismissal and Motion for More Definite Statement (Doc. 109), filed January 3, 2022. For the reasons herein explained, the court **grants in part and denies in part** Defendants' respective motions (Docs. 98, 109).

## I.      Factual and Procedural Background

DeWolff, Boberg & Associates, Inc. ("Plaintiff" or "DeWolff") originally brought this action against former employee Justin Pethick ("Mr. Pethick") in the 401st Judicial District Court, Collin County, Texas, on June 10, 2020, for breach of contract and fiduciary duty.  Mr. Pethick removed the case to federal court on July 9, 2020.  On October 23, 2020, Plaintiff filed a First Amended Complaint (Doc. 22) in which it again asserts causes of action against Mr. Pethick for breach of contract and breach of fiduciary duty, and it also asserts a cause of action for unjust

enrichment.[1] On November 12, 2020, Mr. Pethick filed his Answer (Doc. 25) to the First Amended Complaint. At his request, the case was then transferred on December 16, 2020, from the Eastern District of Texas, Sherman Division, to the Northern District of Texas, Dallas Division.

Several months later, on November 2, 2021, the court granted Plaintiff's request to join as a defendant The Randall Powers Company ("Powers"), Mr. Pethick's new employer, and directed the clerk of the court to file Plaintiff's Second Amended Complaint (Doc. 95).[2] Plaintiff's Second Amended Complaint includes nine counts:

- Count 1: breach of contract (against Mr. Pethick)
- Count 2: breach of fiduciary duty (against Mr. Pethick)
- Count 3: misappropriation of trade secrets (against both Defendants)
- Count 4: aiding and abetting breach of fiduciary duties (against Powers)
- Count 5: aiding and abetting misappropriation of trade secrets (against Powers)
- Count 6: tortious interference with existing contract (against Powers)
- Count 7: tortious interference with prospective relations (against both Defendants)
- Count 8: conspiracy (against both defendants)
- Count 9: unjust enrichment (against both defendants)

While the Second Amended Complaint includes more causes of action, the allegations in the Second Complaint supporting the claims against Mr. Pethick are largely the same as those included in the First Amended Complaint to which he filed an Answer.

DeWolff alleges that it is a global management consulting company headquartered in Dallas, Texas, that has provided cross-industry management consulting services to companies since 1987. All of the claims asserted by DeWolff stem from its allegation that Mr. Pethick not

---

[1] As this and other district courts have previously explained, unjust enrichment is not a separate cause of action. *See Chapman v. Commonwealth Land Title Ins. Co.*, 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) ("Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action but instead a theory of upon an action for restitution may rest.") (internal citations omitted); *see also Dallas Cnty., Tex. v. MERSCORP, Inc.*, 2013 WL 5903300, at *9 (N.D. Tex. Nov. 4, 2013) ("Unjust enrichment is not an independent cause of action under Texas law."), *aff'd*, 791 F.3d 545, 558 (5th Cir. 2015). The court, nevertheless, refers herein to Plaintiff's request to recover for unjust enrichment as a claim or cause of action consistent with Plaintiff's pleadings and the parties' briefs on Defendants' motions, as doing so does not affect the resolution of Defendants' motions.

[2] The court refers to Mr. Pethick and Powers collectively as "Defendants."

**Memorandum Opinion and Order – Page 2**

only began working in the same sales position for Powers while he was still employed by DeWolff, but that he also began actively calling and soliciting DeWolff clients on behalf of Powers. Plaintiff alleges that such conduct violated the fiduciary duties he owed DeWolff, as well as the nonsolicitation, nondisclosure, and noncompetition clauses in the Non-Disclosure Agreement ("NDA") and Employee Service and Non-Competition Agreement ("Employment Agreement") that he signed when he joined DeWolff in October 2018. In addition, DeWolff alleges that Mr. Pethick disclosed and used confidential information pertaining to DeWolff's business and clients for his own benefit and that of Powers, and, in doing so, misappropriated DeWolff's trade secrets and committed other various torts.

Plaintiff alleges that Powers and DeWolff are direct competitors, and that "Powers was founded by a former [DeWolff] employee, Randall Powers, to compete with [DeWolff] by providing the same services pursuant to the same business model that [DeWolff] had developed for decades prior." Pl.'s Second Am. Compl. ¶ 18. For this and other reasons, Plaintiff asserts that Powers was well aware of Mr. Pethick's conduct, knew that his conduct violated his contractual and fiduciary obligations to DeWolff, and actively participated in the alleged tortious conduct and misappropriation of DeWolff's confidential information and trade secrets for its own benefit.

In response to Plaintiff's Second Amended Complaint, Mr. Pethick and Powers both filed motions to dismiss and motions for more definite statements, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e),

## II.    Motions for More Definite Statements—Rule 12(e)

In their respective motions for more definite statements, Defendants contend that Plaintiff should be required to provide a more definite statement and allege in more detail its claim for alleged misappropriation of trade secrets.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 only requires "notice" pleading.  Accordingly, it is not necessary that the pleader set forth each and every factual allegation supporting a claim. The "short and plain statement," however, must contain sufficient allegations of fact "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted).

"If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)." *Beanel v. Freeport–McMoran, Inc*., 197 F.3d 161, 164 (5th Cir. 1999) (citation omitted).  A motion for a more definite statement under Rule 12(e), however, should be granted to clarify the complaint only when the complaint is so unintelligible that the court cannot "make out one or more potentially viable legal theories," and is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to itself." *Sefton v. Jew*, 204 F.R.D. 104, 106 (W.D. Tex. 2000). When a respondent complains of matters that could be answered or developed through discovery, a motion for more definite statement is not warranted because Rule 12(e) is not a substitute for discovery. *Valdez v. Celerity Logistics, Inc*., 999 F. Supp. 2d 936, 946 (N.D. Tex. 2014) (citations omitted); *Arista Records, LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006) (citing *Mitchell v. E–Z Way Towers, Inc*., 269 F.2d 126, 132 (5th Cir. 1959) (holding that Rule 12(e) is not to be used as a substitute for discovery)).

Here, Defendants contend that Plaintiff's allegations regarding confidential "customer information and data" do not provide them with adequate notice to understand the bases for the trade secrets claim asserted against them. For the same reason, Defendants both note in their

respective motions their intention to file a separate Motion to Identify Trade Secrets and subsequently filed a joint Motion for Order Requiring Pre-Discovery Identification of Trade Secrets (Doc. 111).

The court denied this joint motion by Defendants (Doc. 125) on April 28, 2022, reasoning that the sufficiency of Plaintiff's pleadings regarding this claim and any related discovery issues are better suited for resolution in the context of Defendants' motions to dismiss for failure to state a claim or for a more definite statement under Federal Rule of Civil Procedure 12 and the normal discovery process. Doc. 125 at 3. After reviewing Defendants' motions for more definite statement, the court similarly determines that their concerns regarding the bases for Plaintiff's trade secret claim can be addressed through the normal discovery process, as the allegations in Plaintiff's Second Amended Complaint are not so unintelligible, vague, or ambiguous that Defendants cannot respond. Instead, Defendants were able to file quite detailed motions to dismiss under Rule 12(b)(6) in response to this and Plaintiff's other claims. The court, therefore, **denies** Defendants' Motions for More Definite Statement.

## III.    Motions to Dismiss—Rule 12(b)(6)

### A.    Rule 12(b)(6) Legal Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion

[that a court may] take judicial notice of matters of public record."' *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)  (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

B.     **Powers' Motion to Dismiss**

1.     **Preemption (Counts 4, 5, 7, 8, 9)**

Powers contends that Plaintiff's claims for aiding and abetting breach of fiduciary duties (Count 4), aiding and abetting misappropriation of trade secrets (Count 5), tortious interference with prospective relations (Count 7), conspiracy (Count 8), and unjust enrichment (Count 9) should be dismissed as preempted by the Texas Uniform Trade Secrets Act ("TUTSA") to the extent they are based on the misappropriation of information that qualifies as a trade secret.

Plaintiff responds that its pleadings identify the information at issue as "confidential and proprietary information" rather than "trade secret information." Pl.'s Resp. 14. Plaintiff, therefore, contends that, "[t]o the extent that such information is not found to be a trade secret, then TUTSA should not apply, and [it] should be permitted to pursue its common law tort claims" in the alternative. *Id.* Plaintiff similarly asserts that, even if a claim is based in part on the alleged misappropriation of trade secrets, the claim is not preempted if there are sufficient facts to support the claim on other grounds. For this reason, Plaintiff contends that none of its challenged claims is preempted by TUTSA even if they are based in part on alleged misappropriation of trade secrets.

TUTSA became effective in 2013 and governs claims for trade secret misappropriation in Texas. *See* Tex. Civ. Prac. & Rem. Code §§ 134A.001, *et seq*. "The elements of a TUTSA claim are: (1) ownership of a trade secret; (2) misappropriation of the trade secret; and (3) an injury, if the plaintiff is seeking damages." *Retail Servs. WIS Corp. v. Crossmark, Inc.*, No. 05-20-00937-CV, 2021 WL 1747033, at *8 (Tex. App.—Dallas May 4, 2021, pet. denied), *reh'g denied* (June 18, 2021) (citing *EJ Madison, LLC v. Pro-Tech Diesel, Inc.*, 594 S.W.3d 632, 643-44 (Tex. App.—El Paso 2019, no pet.) (citing Tex. Civ. Prac. & Rem. Code §§ 134A.002(1), (3), (6), 134A.004(a)). "Actual and unauthorized use of trade secrets" is required "to prevail on a misappropriation claim."

*Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 273 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) (citing *Southwestern Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016)). "In the context of trade secret cases, use means commercial use for the purpose of profit, including use likely to injure the secret's owner, enrich the defendant, or aid the defendant in its own research and development." *Id.* (citing *Southwestern Energy Prod. Co.*, 491 S.W.3d at 722); *see also General Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450-51 (5th Cir. 2007) ("[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use'").

TUTSA defines "misappropriation" as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) derived from or through a person who used improper means to acquire the trade secret;

(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret . . . ;

(iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

Tex. Civ. Prac. & Rem. Code § 134A.002(3). TUTSA defines "trade secret" as any type of information that the owner has taken reasonable measures to keep secret and which derives

economic value, potential or actual, from not being generally known to others who can obtain economic value from the disclosure or use. *Id.* § 134A.002(6). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." *Id.* § 134A.002(2).

TUTSA "displaces conflicting tort, restitutionary, and other law of [Texas] providing civil remedies for misappropriation of a trade secret," but it "does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret; [or] (2) other civil remedies that are not based upon misappropriation of a trade secret[.]" Tex. Civ. Prac. & Rem. Code § 134A.007. "District courts in the Fifth Circuit have fairly consistently applied the rule that TUTSA preempts a claim for conspiracy unless the plaintiff can show the claim is based on facts unrelated to the trade secret misappropriation." *Vest Safety Med. Servs., LLC v. Arbor Envtl., LLC*, No. 4:20-CV-0812, 2022 WL 2812195, at *3 (S.D. Tex. June 17, 2022) (citing cases), *report and recommendation adopted*, No. 4:20-CV-0812, 2022 WL 2806544 (S.D. Tex. July 18, 2022); *see Trueblue, Inc. v. DeRuby*, 3:18-CV-0192-M, 2018 WL 1784523, at *2 (N.D. Tex. Apr. 13, 2018) ("Courts interpreting the nearly identical provision of the Uniform Trade Secrets Act have uniformly held that a claim is not preempted if the plaintiff is able to show the claim is based on facts unrelated to the misappropriation of the trade secret.") (citations omitted).

Plaintiff advises in its response to Powers' Motion to Dismiss that it is "withdrawing its claim for aiding and abetting misappropriation of trade secrets" against Powers. Pl.'s Resp. 6 n.1. Accordingly, this claim (Count 5) is no longer before the court and will be dismissed with prejudice.

**Memorandum Opinion and Order – Page 10**

Regardless of the labels used by Plaintiff in its pleadings to describe the information at issue, its claims and theories of relief based on conspiracy (Count 8) and unjust enrichment (9) are premised entirely on the alleged misappropriation of DeWolff's trade secrets and the type of confidential information that qualifies as trade secrets under TUTSA. These claims are, therefore, preempted.

DeWolff's claim against Powers for aiding and abetting Mr. Pethick's breaches of fiduciary duties (Count 4) is preempted in part to the extent it is based on: (1) the misappropriation of DeWolff's "secret and confidential information relating to [its] business and clientele"; (2) the utilization and disclosure of DeWolff's "confidential information relating to [its] business and clientele . . . to steal away [DeWolff]'s clients and prospective clients" for the benefit of Mr. Pethick and Powers; and (3) the "unlawful misappropriation of [DeWolff's] confidential client information, and unlawful solicitation of [DeWolff's] clients" through the use of that information. Pl.'s Second Am. Compl. ¶¶ 45-47, 62.

The claim for aiding and abetting the breach of fiduciary duties, however, is not preempted to the extent it is based on: (1) Mr. Pethick accepting employment with and simultaneously performing the same job duties for Powers during his employment with DeWolff or his failure to disclose such arrangement to DeWolff; or (2) the "usurping corporate opportunities from [DeWolff]," unless the usurping of corporate opportunities is based solely on the allegation that Defendants used DeWolff's confidential client information in an effort to solicit and steal for themselves the business opportunity with DeWolff client Triumph. *Id.* ¶¶ 46-47, 78.

DeWolff's claim against Powers for tortious interference with prospective relations (Count 7) is likewise preempted to the extent it is based on the allegation that Defendants used DeWolff's confidential client information to reschedule meetings with Triumph to steal for themselves this

business opportunity. *Id.* ¶ 78.  The claim is not preempted, however, to the extent it is based on the allegation that the meeting with Triumph was rescheduled and deleted from DeWolff's records while Pethick was employed simultaneously for DeWolff and Powers such that Defendants are alleged to have tortiously interfered with DeWolff's prospective business relationship with Triumph or other clients.  *Id.* ¶¶ 78-81.

Accordingly, for the reasons explained, DeWolff's claims and theories of relief against Powers based on conspiracy (Count 8) and unjust enrichment (9) are preempted by TUTSA, whereas DeWolff's claims against Powers for aiding and abetting breaches of fiduciary duties (Count 4) and tortious interference with prospective relations (Count 7) are only preempted in part.

## 2.   Aiding and Abetting (Counts 4 and 5)

Powers contends that Plaintiff's claims for aiding and abetting Mr. Pethick's breach of fiduciary duties (Count 4) and aiding and abetting misappropriation of trade secrets (Count 5) both fail to state a claim upon which relief can be granted.  For support, Powers cites *Taylor v. Rothstein Kass & Company, PLLC*, No. 3:19-CV-1594-D, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020), for the proposition that "the Fifth Circuit has held that no claim for aiding and abetting exists in Texas."  Powers' Mot. 6.

As indicated, Plaintiff has withdrawn its claim against Powers for aiding and abetting the misappropriation of trade secrets (Count 5).  The court, therefore, only addresses Powers' argument as to Plaintiff's claim for aiding and abetting the breach of fiduciary duties (Count 4). Regarding this claim, Plaintiff asserts that state and federal courts in Texas have regularly recognized causes of action for aiding and abetting breaches of fiduciary duties.  One of the cases cited by Plaintiff is *Meadows v. Hartford Life Insurance Company*, 492 F.3d 634 (5th Cir. 2007), which states as follows regarding a claim for knowing participation in a breach of fiduciary duty:

**Memorandum Opinion and Order – Page 12**

Under Texas law, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett–Wallace Corp*., 138 Tex. 565, 160 S.W.2d 509, 514 (1942). To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship. *See Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721-22 (Tex. App.[—Austin 2001, pet. denied]) (citing *Kinzbach Tool*, 160 S.W.2d at 514).

*Id.* at 639.

Powers replies that Plaintiff's argument ignores binding Fifth Circuit authority. Powers' Reply 1 (citing *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A*., 800 F. App'x 239, 249-50 (5th Cir. 2020)). Powers contends that Plaintiff ignores numerous other cases in which courts have declined to recognize an independent claim for aiding and abetting breach of fiduciary duty. Powers also contends that, except for one case cited by Plaintiff, the cases it relies on are more recent than those relied on by Plaintiff. For support, Powers again cites *Taylor*, but this time for the additional proposition that the Texas Supreme Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting. Powers also cites other Fifth Circuit cases to support its argument that no claim for aiding and abetting exists in Texas. Powers' Reply 2 (citing *DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781-82 (5th Cir. 2018) (citing *Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995)). Finally, Powers argues that Plaintiff's reliance on the 1942 Texas Supreme Court case *Kinzbach Tool Company* is misplaced because the Texas Supreme Court in *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017), "stated unequivocally that it has never adopted such a claim." Powers' Reply 2.

While the court in *First United Pentecostal Church of Beaumont* began by noting that it had "never expressly decided whether Texas recognizes a cause of action for aiding and abetting,"

it assumed without deciding that such a claim existed for purposes of deciding that appeal since the issue was not briefed by the parties. 514 S.W.3d at 224. The Texas Supreme Court, nevertheless, rejected the plaintiff's argument that its pleadings regarding the defendant's knowing participation in a breach of fiduciary duty were sufficient to put the defense on notice that it was asserting an unpleaded aiding and abetting claim.  *Id*. at 224-25. From this, the court disagrees with Plaintiff's suggestion, based on this and other cases, that a claim under Texas law for knowing participation in a breach of fiduciary duty is necessarily synonymous with one for aiding and abetting breaches of fiduciary duty.

The court, nevertheless, determines that *First United Pentecostal Church of Beaumont* and the other cases relied on by Powers are distinguishable because Plaintiff has not asserted a "distinct" or stand-alone claim for aiding and abetting.  Moreover, even assuming as Powers contends that Texas has yet to recognize a claim for aiding and abetting in the breach of fiduciary duty context, the allegations in the Second Amended Complaint are sufficient to put Powers on notice that Plaintiff is asserting a claim for knowingly participating in Mr. Pethick's alleged breaches of fiduciary duty. This is so even though Count 4 is titled "Aiding and Abetting Breach of Fiduciary Duties." Pl.'s Second Am. Compl. 15. As Plaintiff's pleadings satisfy the elements for a claim of knowing participation in a breach of fiduciary duty, dismissal of Count 4 is not appropriate at this juncture.

### 3.   Tortious Interference With Existing Contract (Count 6)

Plaintiff's claim for tortious interference with an existing contract is based on its allegation that Powers intentionally interfered with DeWolff's contracts with Mr. Pethick.  Powers contends that Plaintiff's pleadings fail to state a claim on this basis because DeWolff's agreements with Mr. Pethick are unenforceable as a matter of law, regardless of whether the court applies Delaware

law, as provided in the choice of law provisions, or Texas law.  In this regard, Powers asserts that the noncompete restrictions are unreasonably overbroad in that they are not limited to customers with whom Mr. Pethick dealt during his employment, and they prohibit him from working for a competitor in any capacity. Powers asserts that the nonsolicitation provisions are similarly overbroad and unreasonable because they prohibit Mr. Pethick from soliciting all clients and prospects in DeWolff's database even if he or anyone else at DeWolff never had contact with them. Powers contends that the restrictive covenants are overly broad and unenforceable for another reason—because they do not contain any geographic limitation.

Plaintiff disagrees with Powers' interpretation of the agreements and responds that the limitations that Powers focuses on in its Motion to Dismiss are reasonable or can be given a reasonable meaning.  Plaintiff asserts that the nonsolicitation provisions precluded Mr. Pethick "from soliciting those clients that [DeWolff] either provided 'productive utilization services' during [Mr.] Pethick's brief employment, or which [DeWolff] developed a specific productivity, sales, or marketing strategy during [Mr.] Pethick's employment to provide such services."  Pl.'s Resp. 9.  Plaintiff, therefore, contends that the allegations in its Second Amended Complaint are:

> *sufficient to give rise to a reasonable interpretation* that [Mr.] Pethick was prohibited from soliciting (i) those clients for whom [DeWolff] performed a project over the seventeen-month period of [Mr.] Pethick's employment (October 2018 through May 2020); and (ii) those clients that [Mr.] Pethick assisted in developing a specific productivity, sales, or marketing strategy in order for [DeWolff] to perform a project for them.

*Id.* (emphasis added).

Plaintiff asserts that the noncompetition provisions are likewise reasonable in scope, as they are tailored narrowly to "specifically affect only those companies that provide the same service ('productive utilization services') as [DeWolff] to the same clients that [Mr.] Pethick interacted with or which [DeWolff] otherwise performed a project during [Mr.] Pethick's tenure."

**Memorandum Opinion and Order – Page 15**

*Id.*  Plaintiff further asserts that the noncompetition provisions do not preclude Mr. Pethick from

obtaining employment in the entire management consulting industry; rather, he was:

> free to accept employment at any of the thousands of management consulting firms that do not perform the same type of "productive utilization services" that [DeWolff] and a small group of direct competitors, including Powers, perform. And, to the extent that [Mr.] Pethick is restrained from working at [DeWolff's] direct competitors, such restriction only lasts for one year after his termination.

*Id*. at 10.  Plaintiff contends: "At a minimum, . . . determination as to the reasonableness of the

[noncompete and nonsolicitation] restraints . . . require[s] discovery and the development and

consideration of evidence, which is inappropriate at the dismissal stage."  *Id.* at 11.

Neither Powers nor Plaintiff argues that the noncompete or nonsolicitation provisions are

ambiguous, and the court determines that they are not ambiguous such that they can be construed

as a matter of law applying general principals of contract interpretation.  *See Wabash Life Ins. Co.*

*v. Garner*, 732 F. Supp. 692, 695 (N.D. Tex. 1989) (concluding that the adoption of Section 15.50

of the Texas Commerce Code as to the enforceability of restrictive covenants did not displace the

longstanding rules of contractual interpretation under Texas law).  As the parties both agree that

Texas law applies, the court's analysis will also apply Texas law.

In *D'Onofrio v. Vacation Publications, Incorporated*, 888 F.3d 197 (5th Cir. 2018), the

Fifth Circuit explained as follows regarding the law applicable to covenants not to compete under

Texas law:

> Under Texas law, covenants not to compete that "extend[ ] to clients with whom the employee had no dealings during [her] [or his] employment" or amount to industry-wide exclusions are "overbroad and unreasonable." *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). Similarly, the absence of a geographical restriction will generally render a covenant not to compete unreasonable. *See Peat Marwick Main & Co.* [*v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991)] (stating that a restrictive covenant "must not restrain [a former

employee's] activities into a territory into which his former work has not taken him[.]").

*Id.* at 211-12; *see also Peat Marwick Main & Co.*, 818 S.W.2d at 387 (applying same standard to restrictive nonsolicitation covenants).

Here, because the provisions at issue are unambiguous, the reasonableness of the restrictive covenants turns not on the interpretation that Plaintiff now attempts to assign to the covenants in its pleadings or its responsive brief, which adds language not included in the agreements, but rather on the language used in the agreements themselves.  For the reasons urged by Powers, the court agrees that the restrictive covenants are overly broad and unenforceable as written, but it determines that dismissal of Plaintiff's claim for tortious interference with an existing contract is premature.

As pointed out by Plaintiff and the Fifth Circuit in *D'Onofrio*, "Section 15.51 of the Texas Business and Commerce Code requires courts to reform covenants found to be unreasonable as to time, geographical area, or scope of activity." *D'Onofrio*, 888 F.3d at 212 (citing Tex. Bus. & Com. Code § 15.51(c)). Plaintiff raised the issue of reformation in response to the motions to dismiss filed by both Defendants, and Defendants contest whether reformation is moot or can save Plaintiff's tortious interference claim. The factual and legal bases for the parties' respective positions, however, are not adequately briefed with references to legal authority and the pleadings as required by this District's Local Civil Rules.[3] *See* L.R. 7.1(d).  Accordingly, the court does not decide here whether or how the covenants can or should be reformed, or the effect, if any, of

---

[3] For example, Mr. Pethick argues in his reply in support of his motion to dismiss Plaintiff's breach of contract claim that, because the covenants in the agreements expired on May 15, 2021, the issue of reformation is moot.  He cites authority for support, but he does not explain the factual basis for his assertion that the covenants expired on this date in relation to Plaintiff's 48-page pleading, which includes the documents attached to the Second Amended Complaint. Moreover, as herein explained, this is an issue that Mr. Pethick could have, and should have, raised before filing his Answer to Plaintiff's First Amended Complaint.

**Memorandum Opinion and Order – Page 17**

reformation on Plaintiff's ability to recover against either Defendant.  It, instead, reserves the resolution of this issue for summary judgment, that is, if the parties raise the issue of reformation again and point the court to relevant legal authority, evidence, and information necessary to rule on the issue.

### 4.   Tortious Interference with Prospective Relations (Count 7)

Powers contends that Plaintiff has failed to state a claim for tortious interference with prospective business relations under Texas law because it has not identified *all* clients that Defendants solicited or *all* of the potential business relationships for which Defendants allegedly interfered.  In other words, Powers argues that, "because Plaintiff has failed to identify [all] alleged prospective business relationships, it has failed to state a claim under Texas law," which makes clear that a general allegation that the defendant has interfered with a prospective business relationship is insufficient. Powers' Mot. 14 (citations omitted).  For support, Powers relies on a number of unpublished district court cases out of the Southern and Northern Districts of Texas.[4]

To state a claim for tortious interference with prospective business relations, a plaintiff must allege facts that show:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*WickFire, LLC v. Laura Woodruff; TriMax Media, LLC*, 989 F.3d 343, 356 (5th Cir. 2021)

(quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).  In

---

[4] Powers also cites one published case out of the Southern District of Texas—*Rimkus Consulting Group, Incorporated v. Cammarata*, 688 F. Supp. 2d 598, 676 (S.D. Tex. 2010)—which is likewise not binding precedent on the undersigned.

addition, for tortious interference with an existing business relationship claim, the defendant's conduct must have resulted in "some obligatory provision of a contract having been breached." *Wickfire*, 989 F.3d at 354 (citations omitted). To plausibly allege a tortious interference with prospective business relationship claim, there must be "a reasonable probability that the plaintiff would have entered into a business relationship with a third party" and "the defendant's conduct was independently tortious or unlawful." *Id*. at 356 (quoting *Coinmach Corp.*, 417 S.W.3d at 923).

Plaintiff contends, and the court agrees, that its allegations regarding its existing and potential business relationship with Triumph suffice at this stage to state a claim under Texas law for tortious interference with prospective business relations. To the extent that Plaintiff intends to rely on other relationships, this can be ferreted out during discovery. Accordingly, Powers is not entitled to dismissal of this claim.

### 5.   Conspiracy

Having determined that Plaintiff's conspiracy claim is preempted, the court need not address Powers' alternative contention that Plaintiff's pleadings are insufficient to state a claim for relief based on conspiracy.

### C.   Mr. Pethick's Motion to Dismiss

Mr. Pethick contends that TUTSA preempts Plaintiff's claims for breach of fiduciary duty (Count 2), tortious interference with prospective business relations (Count 7), conspiracy (Count 8), and unjust enrichment (Count 9). In addition, he contends that Plaintiff's pleadings are insufficient to state valid claims for breach of contract (Count 1), tortious interference with prospective business relations (Count 7), and conspiracy (Count 8).

Federal Rule of Civil Procedure 12(b) requires that a motion asserting failure to state a claim upon which relief can be granted under Rule 12(b)(6) or any of the other Rule 12(b) defenses

"must be made before filing a responsive pleading." Fed. R. Civ. P. 12(b). As noted, Mr. Pethick previously filed his Answer (Doc. 25) to Plaintiff's First Amended Complaint on November 12, 2020. Although Plaintiff was subsequently allowed to amend its pleadings, the allegations with respect to its claims against Mr. Pethick for breach of contract, breach of fiduciary duty, and unjust enrichment in the First Amended and Second Amended Complaints are substantially the same or identical with the only difference being the addition of allegations against Powers. Accordingly, Mr. Pethick's motion as to these claims (Counts 1, 2, 9) is untimely under Rule 12(b) and will be denied for this reason. Mr. Pethick's contentions regarding the remaining claims (Counts 7 and 8) are substantially like those asserted in Powers' Motion to Dismiss. The court's ruling as to these claims is, therefore, the same.

## IV.    Conclusion

For the reasons discussed, Defendants' Motions for More Definite Statement as to Plaintiff's claim for misappropriation of trade secrets are **denied** and their Motions to Dismiss are **granted in part and denied in part** as follows:

Powers' Motion to Dismiss (Doc. 109) is **granted** with respect to Plaintiff's claims and theories of relief based on conspiracy (Count 8) and unjust enrichment (9) as preempted by TUTSA. Powers' Motion to Dismiss as to Plaintiff's claim for aiding and abetting misappropriation of trade secrets is also **granted**, as this claim was withdrawn (Count 5) by Plaintiff. Pl.'s Resp. 6 n.1. Accordingly, Plaintiff's claims against Powers for aiding and abetting misappropriation of trade secrets (Count 5), conspiracy (Count 8), and unjust enrichment (9) are **dismissed with prejudice.** Powers' Motion to Dismiss is **denied** in all other respects, except to the extent that the court determined that Plaintiff's claims for aiding and abetting breaches of

**Memorandum Opinion and Order – Page 20**

fiduciary duty (Count 4) and tortious interference with prospective relations (Count 7) are based in part on the misappropriation of a trade secret and thus preempted in part.

Mr. Pethick's Motion to Dismiss (Doc. 98) is **granted** with respect to Plaintiff's claim for conspiracy (Count 8) because it is preempted by TUTSA, and this claim against him is **dismissed with prejudice**. His Motion to Dismiss is **denied** in all other respects, except to the extent that the court determined that Plaintiff's claims for tortious interference with prospective relations (Count 7) is based in part on the misappropriation of a trade secret and thus preempted in part.

**It is so ordered** this 29th day of September, 2022.

Sam A. Lindsay
United States District Judge